**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MERCH TRAFFIC, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 26-cv-09355 |

**COMPLAINT**

Plaintiff Merch Traffic, LLC ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold products using infringing and counterfeit versions of the federally registered trademarks licensed by Plaintiff to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. Plaintiff is the exclusive licensing agent representing several musical artists and bands in the United States, including, but not limited to, Avenged Sevenfold, Bruno Mars, Eazy-E, Harry Styles, Nirvana, Notorious B.I.G., and The Cure (collectively, "Plaintiff's Clients").

4. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon the reputation and goodwill of Plaintiff's Clients and in turn deprive Plaintiff and Plaintiff's Clients of licensing revenue by offering for sale and selling unauthorized and unlicensed products using infringing and counterfeit versions of one of more of Plaintiff's Client Trademarks (as defined below) (the "Unauthorized Products").

5. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's Client Trademarks as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Plaintiff and

2

Plaintiff's Clients have been irreparably harmed and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable Plaintiff's Client Trademarks as a result of Defendants' actions. Plaintiff therefore seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

6.    Plaintiff is a Delaware company with its headquarters in New York, New York, and is a subsidiary of Live Nation Entertainment, Inc., a global leader in live entertainment.

7.    Plaintiff operates as a merchandiser, merchandise license agent, and intellectual property enforcement agent for several artists and bands in the United States, including, but not limited to, Plaintiff's Clients. Plaintiff, on behalf of Plaintiff's Clients, has entered into numerous trademark licensing agreements in the United States, authorizing the use of the famous Plaintiff's Client Trademarks on a wide variety of products, including clothing, accessories, posters, and other merchandise (collectively, "Plaintiff's Products").

8.    Plaintiff's Clients are the owners of many famous and distinctive trademarks and work in conjunction with Plaintiff to license those trademarks. Plaintiff is the exclusive licensing agent for Plaintiff's Clients for a wide category of goods and distribution channels, including clothing, accessories, posters, and other merchandise. Plaintiff's Clients commercially exploit, protect, and enforce rights in the famous and distinctive trademarks, names, logos, symbols, emblems, and other identifying marks associated with Plaintiff's Clients, including, but not limited to, those that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and Trademark Office and those that Plaintiff's Clients have adopted and used in commerce throughout the United States, including in Illinois. A non-exclusive list of the famous and distinctive trademarks that Plaintiff's Clients have registered before the

3

United States Patent and Trademark Office, and currently use in commerce, include the following

(collectively, the "Plaintiff's Client Trademarks"):

| REGISTRATION NUMBER | REGISTERED TRADEMARK |
|---|---|
| 2,992,513 | AVENGED SEVENFOLD |
| 3,397,561 | |
| 3,380,764 | |
| 4,143,492 4,147,313 4,625,163 | BRUNO MARS |
| 3,801,188 3,192,195 | EAZY-E |
| 5,688,195 | HARRY STYLES |
| 1,836,895 1,842,789 3,937,416 4,663,544 | NIRVANA |
| 5,430,930 5,441,075 | |
| 1,797,928 | FLOWER SNIFFIN KITTY PETTIN BABY KISSINCORPORATE ROCK WHORES |

| 6,254,543<br>6,667,377 | THE NOTORIOUS BIG |
|---|---|
| 5,172,786 | IT WAS ALL A DREAM |
| 6,667,378 | BIGGIE SMALLS |
| 4,476,916 | THE CURE |

9.    Plaintiff's Client Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for Plaintiff's Client Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's Clients' exclusive right to use and license Plaintiff's Client Trademarks pursuant to 15 U.S.C. § 1057(b).  True and correct copies of the United States Registrations for Plaintiff's Client Trademarks included in the table above are attached hereto as **Exhibit 1**.

10.    Plaintiff's Client Trademarks are displayed extensively on Plaintiff's Products and on marketing and promotional materials.  Plaintiff's Client Trademarks have been extensively promoted and advertised at great expense.  In fact, Plaintiff and Plaintiff's Clients have expended millions of dollars in advertising, promoting, and marketing featuring Plaintiff's Client Trademarks, as well as significant time and other resources.  As a result, products bearing Plaintiff's Client Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff and Plaintiff's Clients.

11.    Plaintiff's Client Trademarks are distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.  Plaintiff's Client Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As such, the goodwill

associated with Plaintiff's Client Trademarks is of incalculable and inestimable value to Plaintiff and Plaintiff's Clients.

12. Plaintiff's Clients, in partnership with Plaintiff, operate e-commerce webstores where they promote and sell genuine Plaintiff's Products, including clothing, accessories, posters, and other merchandise.

13. Plaintiff's innovative marketing and product designs, combined with the immense popularity of Plaintiff's Clients, have made Plaintiff's Client Trademarks famous marks. The widespread fame, outstanding reputation, and significant goodwill associated with Plaintiff's Clients have made Plaintiff's Client Trademarks invaluable assets. By virtue of its status as exclusive licensing agent, Plaintiff also has a substantial interest in Plaintiff's Client Trademarks.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of Plaintiff's Clients has resulted in significant counterfeiting of Plaintiff's Client Trademarks. Consequently, Plaintiff has an anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

18.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold Unauthorized Products to residents of Illinois.  Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

19.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Neither Plaintiff nor Plaintiff's Clients licensed or authorized Defendants to use Plaintiff's Client Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiff's Products.

---

[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

20.     Many Defendants also deceive unknowing consumers by using one or more Plaintiff's Client Trademarks authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Plaintiff's Products. Other e-commerce stores operating under the Seller Aliases omit using Plaintiff's Client Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

21.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Defendants are collectively causing harm to Plaintiff's and Plaintiff's Clients' reputations and Plaintiff's Clients' goodwill because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same

9

illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

24. E-commerce store operators like Defendants communicate with each other on chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff or Plaintiff's Clients, have knowingly and willfully used and continue to use Plaintiff's Client Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

27. Defendants' unauthorized use of Plaintiff's Client Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has

10

caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiff's Client Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Client Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from products sold or marketed under Plaintiff's Client Trademarks.

30.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Client Trademarks without Plaintiff's and Plaintiff's Clients permission.

31.     Plaintiff is the exclusive United States licensee of merchandise featuring Plaintiff's Client Trademarks.  The United States Registrations for Plaintiff's Client Trademarks (**Exhibit 1**) are in full force and effect.  On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Client Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiff's Client Trademarks.  Defendants' willful, intentional, and unauthorized use of Plaintiff's Client Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

11

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff and Plaintiff's Clients will continue to suffer irreparable harm to their reputation and the goodwill of the well-known Plaintiff's Client Trademarks.

34. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff and/or Plaintiff's Clients, or as to the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff and Plaintiff's Clients.

37. By using Plaintiff's Client Trademarks in connection with the sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with Plaintiff's Client Trademarks.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiff's Client Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's product or is not authorized by Plaintiff or Plaintiff's Clients to be sold in connection with Plaintiff's Client Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff on behalf of Plaintiff's Clients and approved by Plaintiff and Plaintiff's Clients for sale under Plaintiff's Client Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control or supervision of Plaintiff on behalf of Plaintiff's Clients, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing Plaintiff's Client Trademarks and damaging the goodwill associated with Plaintiff's Client Trademarks; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff and Plaintiff's Clients to be sold or offered for sale, and which bear any of Plaintiff's Client Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Client Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Client Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Client Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 5th day of August 2026.　　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Jennifer M. Younan
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
jyounan@gbc.law

*Counsel for Plaintiff Merch Traffic, LLC*

15